UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-470-GWU

BILLY BRUMLEY, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Billy Brumley brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

08-470  Billy Brumley

        Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

08-470  Billy Brumley

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

3

08-470 Billy Brumley

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id.</u> Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to

make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

08-470 Billy Brumley

a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded Brumley, a 30-year-old former construction pipe fitter with a "limited" education, suffered from impairments related to borderline intelligence, anxiety, illiteracy, and degenerative disc disease of the lumbar spine.  (Tr. 13, 17-18).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of sedentary level work.  (Tr. 16-17).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 18-19).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 18).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert William Cody included one of Brumley's age, education and work background, with a limitation to sedentary level work restricted from a full range by such non-exertional limitations as (1) an inability to handle complex and detailed instructions; (2) an "impaired but

08-470  Billy Brumley

not precluded" ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and sustain ordinary routine without special supervision; (3) an inability to work as part of a close-knit work team but must work in one's own work station; (4) an "impaired" ability to make work-related decisions, set realistic goals, make independent plans, and use judgment on the job with no requirement for independent judgment; (5) an "impaired" but not precluded ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) an inability to work with the general public; (7) a need to avoid work requiring intense supervision; (8) an "impaired but not precluded" ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (9) a need to avoid work requiring frequent work place changes; (10) a need to miss one day a month due to ailments; (11) a need to avoid highly stressful work; (12) an "impaired but not precluded" ability to behave in an emotionally stable manner and to relate predictably in social situations; (13) an inability to perform work requiring more than borderline intelligence with less than an average memory and no requirement for complex or abstract work; (14) the need to be able to sit or lie down during the lunch hour; (15) the need for a sit/stand at will option; (16) an inability to more than occasionally be required to climb, balance, stoop, crouch, kneel, or crawl;

(17) a need to avoid exposure to unprotected heights, dangerous moving machinery, automotive equipment, ladders, open water and open flames; (18) an inability to lift substantial amounts of weight when reaching to full arm's length; (19) a need to avoid temperature extremes and unusual dampness; (20) a need for a clean air environment; (21) a need to avoid exposure to vibrations; and (22) a second grade reading level and a fourth grade level ability to perform arithmetic. (Tr. 116-117, 391). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 391). Therefore, assuming that the vocational factors considered by Cody fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

 With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Joseph Hartig, a treating source, opined that Brumley would be restricted by an inability to lift more than 20 pounds and a limited ability to stand. (Tr. 302). The hypothetical question's restriction to sedentary level work and the sit/stand at will option clearly accommodate these limitations. Dr. Troy Weirick, an examining consultant, found no restriction with regard to lifting, carrying, standing, walking, sitting, postural activities, physical functions, environmental conditions, gross manipulation, hearing or speaking. (Tr. 268). Dr. Allen Dawson, a non-examining medical reviewer, opined that the plaintiff

08-470  Billy Brumley

did not suffer from any functional limitations due to his physical condition. (Tr. 281). More severe physical restrictions than those found by the ALJ were not reported by such treating and examining sources as the staff at Grant County Hospital (Tr. 207-212, 221-264), the staff at St. Elizabeth Medical Center (Tr. 213-220), the staff at University Hospital (r. 269-271), and the staff at Georgetown Community Hospital (Tr. 359-365). These reports provide substantial evidence to support this portion of the administrative decision.

The ALJ also dealt properly with the evidence relating to Brumley's mental condition. Psychologist Terri Caudill examined the plaintiff and diagnosed an anxiety disorder and reading disorder. (Tr. 277). Caudill opined that the plaintiff would be "mildly to moderately" impaired in his ability to handle complex tasks. (Tr. 278). The claimant was said to be "mildly" impaired in relating to others and responding to daily pressures. (Id.). His ability to handle simple and detailed tasks was said to be adequate. (Id.). The extensive mental limitations of the hypothetical question were compatible with these restrictions. Psychologists Laura Cutler (Tr. 296-298) and Edward Stodola (Tr. 352-355) each reviewed the record and opined that Brumley would be "moderately" limited in such areas as handling detailed instructions and responding appropriately to changes in the work setting. The hypothetical factors were essentially consistent with these restrictions. Dr. Terry Shwartz testified at the administrative hearing as a medical advisor. (Tr. 384-389).

08-470  Billy Brumley

The witness was asked to identify mental limitations and suggested problems with complex job instructions, difficulty making work-related decisions, setting realistic goals, making independent plans and using judgment, no ability to perform work requiring independent judgment, difficulties responding appropriately to changes in the work setting, borderline intelligence with less than average memory and an inability to perform complex or abstract work and a second grade reading level and fourth grade arithmetic.  (Tr. 116-117, 387-388).  These restrictions were all considered by the vocational expert as well.  Therefore, the hypothetical question fairly depicted the plaintiff's mental status.

Brumley primarily argues that the ALJ erred in concluding that he did not meet the requirements of § 12.05(C) of the Listing of Impairments concerning mental impairments.  This Listing requires a claimant to produce: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function" . . . . 20 C.F.R., Part 404, Subpart P, App. 1, § 12.05(C).  The regulations further provide that: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence supports onset of the impairment before age 22."  20 C.F.R., Part, 404, Subpart P, App. 1, § 12.05. Thus, to satisfy the requirements of § 12.05(C), a claimant must demonstrate an IQ in the appropriate

08-470  Billy Brumley

range which was manifested in the developmental period as well as another mental or physical impairment.

Brumley notes that intelligence testing administered by Caudill revealed a Verbal IQ score of 70, a Performance IQ score of 75 and a Full Scale IQ score of 70. (Tr. 275). Two of the three scores were within Listing range. The plaintiff notes that Dr. Shwartz testified that these scores were valid. (Tr. 387). However, the court notes that Caudill, the examiner who actually administered the intelligence testing, did not find the scores to be valid. Instead, the examiner indicated that "these scores are considered at least a mild underestimate of his true cognitive abilities." (Tr. 275). Caudill ultimately diagnosed neither mild mental retardation nor even borderline intelligence. (Tr. 277). Dr. Shwartz stated that Caudill's scores were valid in the context of discussing other IQ scores which were lower than those obtained by Caudill. (Tr. 386-387). The medical advisor indicated that since it was impossible to fake a higher IQ score, "you have to go with the higher scores as being the more accurate or valid." (Tr. 386-387). Thus, the witness did not actually testify that these scores were valid per se, just more accurate than the other set of IQ scores. Therefore, the court finds that Brumley did not meet the requirements of § 12.05(C).

Brumley also asserts that the hypothetical question failed to advise the vocational expert that as a person of borderline intellectual functioning, he would be

08-470 Billy Brumley

in the bottom two percent of the population in intellectual functioning. He argues that the <u>Dictionary of Occupational Titles</u> 4th Ed., 1991 (DOT) states that the job of hand packer, which was cited by the vocational expert as being available, cannot be performed by a person in the lowest 10 percent of the population in intellectual functioning. The claimant cites DOT Number 920.587-018 which refers to the job of hand packer, the job cited by Cody. However, the court notes that DOT Number 920.587-018 indicates that this is a medium level position. The job identified by Cody was clearly said to be sedentary level work. (Tr. 391). Thus, this must be a different job from that listed in Number 920.587-018. The vocational expert was advised of the individual of the hypothetical question being of borderline intelligence and testified that the jobs he cited were compatible with the DOT. (Tr. 392). Therefore, under these circumstances, the court finds no error in reliance upon this job.

      Finally, Brumley argues that the ALJ erred in by failing to cite sufficient rationale in rejecting his credibility with regard to his back pain. However, the ALJ noted a number of factors for this portion of the decision including his daily activities, the lack of medical evidence supporting the claims such as an MRI scan showing no focal nerve root entrapment, his reliance upon over-the-counter medications, and the fact that no treating or examining source found him disabled.

08-470  Billy Brumley

(Tr. 16-17, 327).  The court finds these reasons to be adequate and, so, must reject the plaintiff's argument.

After review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 30th day of September, 2009.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**